**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. _____

| | |
|---|---|
| SUNBEAM PRODUCTS, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| GUANDONG GALANZ MICROWAVE ELECTRICAL APPLIANCES MANUFACTURING CO., LTD., a Chinese entity, | ) ) ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

Plaintiff, Sunbeam Products, Inc. ("Sunbeam"), sues Defendant Guandong Galanz Microwave Electrical Appliances Manufacturing Co., Ltd. ("Galanz"), and alleges:

1.  This is an action seeking damages and injunctive relief for Galanz's breach of the exclusivity provisions of the parties' Supply Agreement.

**PARTIES, JURISDICTION, AND VENUE**

2.  Sunbeam is a Delaware corporation with its principal place of business at 2381 Executive Center Drive, Boca Raton, Florida 33431.

3.  Galanz is a Chinese manufacturing entity with its principal place of business at No. 3 Xingpu Road East, Huangpu Town, Zhongshan City, Guangdong China.

4.  This Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. § 1332 in that: (1) the Complaint seeks injunctive relief the value of which is in excess of $75,000; (2) the Complaint seeks the recovery of damages in excess of $75,000, exclusive of interest, costs

and attorney's fees; and (3) Sunbeam is a citizen of Delaware and Florida while Galanz is a Chinese entity and is not a citizen of Delaware or Florida.

5. This Court has personal jurisdiction over Defendant because it: (1) irrevocably submitted to jurisdiction in this Court pursuant to the Supply Agreement sued upon; and (2) breached a contract requiring performance in this state.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district and because a defendant not resident in the United States may be sued in any judicial district.

## GENERAL ALLEGATIONS

**I. Sunbeam and Galanz Entered into a Supply Agreement for the Manufacture, Sale, and Exclusive Distribution of Certain Toaster Ovens.**

7. Sunbeam and Galanz are parties to a Supply Agreement, attached hereto as **Exhibit 1**, dated April 8, 2008.

8. The Supply Agreement establishes the general terms under which Galanz will supply Sunbeam with certain branded products (the "Products") for Sunbeam's distribution and sale in exclusive territories.

9. Exhibit A to the Supply Agreement defines the Products covered by the Supply Agreement, which originally included certain models of toaster ovens.

10. Over the years, the parties have amended the Supply Agreement by, among other things, adding exhibits to include additional Products.

11. As relevant here, paragraph 23 b. of the Supply Agreement provides that Sunbeam "shall have the exclusive right to the trade dress, visual design, and copyrights in the non-functional aspects of the Products and packaging covered by the Agreement."

2

12. Paragraph 23 b. further provides that Galanz "agrees that it will not manufacture or sell any goods which are the same, similar to, or likely to be confused with the trade dress, product configuration, visual design, or copyrighted aspects of the Products except under the terms of this Agreement."

13. Paragraph 23 c. sets forth how to determine which party owns the designs for the Products. Specifically, paragraph 23 c. provides that Exhibit B to the Supply Agreement will identify the owner of the functional features of the designs (to the extent proprietary) and the owner of the ornamental or industrial designs. Paragraph 23 c. further provides that "[a]ny inventions, innovations, designs, plans, specifications, drawings, material, components or the like supplied by or on behalf of [Sunbeam] shall remain property of [Sunbeam] and [Galanz] shall have no rights, property or interest in same . . . ." Galanz also "irreversibly assigns any and all rights it may have or acquire in such items (including but not limited to rights to improvements or changes), at law or in equity, if any to [Sunbeam]."

14. Pursuant to paragraph 27, the exclusivity provisions in Paragraph 23 survive any expiration or termination of the Supply Agreement.

15. Exhibit A to the Supply Agreement contains certain "General Terms," including (a) identifying the initial toaster oven Products; (b) establishing an initial three year term; and (c) identifying North America, South America, and Mexico as territories where Sunbeam would sell the initial Products. Exhibit A also contains additional exclusivity language:

> [Galanz] shall not sell Products, or substantially similar products to any third party under a trade name, trademark, or other proprietary name or symbol, which is owned or licensed to said third party, it being the intention of the parties that [Galanz] shall not, during the term of this Agreement, manufacture or sell any Products, including "Private label" Products, to any third parties.

16.     As to the initial Products covered by the Supply Agreement, Exhibit B provides that Galanz is the owner of the functional features of the designs, as well as the owner of the ornamental or industrial designs.

## II.    Sunbeam and Galanz Entered Into Several Amendments to the Supply Agreement, Which Added an Automatic Renewal Term, Added the French Door Toaster Ovens at Issue in this Case, and Added Additional Exclusivity Terms

17.     In August 2014, Sunbeam and Galanz entered into Amendment 114 to the Supply Agreement.  Amendment 114, a copy of which is attached hereto as **Exhibit 2**, ratifies the existing Supply Agreement (including amendments) and adds an automatic renewal provision to the term of the Supply Agreement.  Specifically, it provides that "upon the expiration date of the Term of this Agreement as defined in Exhibit [A], this Agreement shall be automatically renewed for separate but successive one-year terms ('Automatic Renewal Period(s)')."  During an Automatic Renewal Period, Amendment 114 provides that either party may terminate the Supply Agreement for convenience upon 90 days written notice.

18.     In December 2014, Sunbeam and Galanz entered into Amendment 116 to the Supply Agreement.  Amendment 116, a copy of which is attached hereto as **Exhibit 3**, ratifies the existing Supply Agreement (including amendments) and, among other things, amends Exhibits A and B to the Supply Agreement to add Exhibits A-12 and B-12.

19.     Exhibit A-12, in turn, adds the French door toaster oven Products at issue in this action (the "French Door Toaster Ovens") to the Supply Agreement.  Exhibit A-12 also sets an initial term for the French Door Toaster Ovens of three years, establishes a U.S. sales territory, and twice provides for Sunbeam's worldwide exclusivity.  Exhibit A-12 again provides that:

> [Galanz] shall not sell Products, or substantially similar products to any third party under a trade name, trademark, or other proprietary name or symbol, which is owned or licensed to said third party, it being the intention of the parties that [Galanz] shall not, during the term of this Agreement,

4

manufacture or sell any Products, including "Private label" Products, to any third parties.

20. Exhibit B-12 provides that Sunbeam is the owner of both the functional features of the designs and the ornamental or industrial designs for the French Door Toaster Ovens.

21. In January 2016, the parties entered into Amendment 140 to the Supply Agreement. Amendment 140, attached hereto as **Exhibit 4**, again ratifies the existing Supply Agreement (including amendments) and provides additional exclusivity terms of general application:

> [Galanz] shall not sell Products, or substantially similar products to any third party under a trade name, trademark, or other proprietary name or symbol, which is owned or licensed to said third party, it being the intention of the parties that [Galanz] shall not, during the term of this Agreement, manufacture or sell any Products, including "Private label" Products, to any third parties in the Territories and if no Territories are provided above, than [sic] on a worldwide basis.

22. Amendment 140 goes on to define "substantially similar Products" as "any product that [Sunbeam] reasonably believes is substantially similar to the Products." That definition includes, but is not limited to, products that use 90% of the tooling used in the Products or any products that "use the same or similar design language for the 'individual design look' of the Product regardless of size, color, surface material, or arrangement or placement of the functional buttons, user interface, or knobs."

23. If Galanz is unsure as to whether a product is substantially similar to the Products, Amendment 140 requires Galanz to consult with Sunbeam for Sunbeam's decision as to whether the product is substantially similar, and Sunbeam's decision is final.

24. Amendment 140 provides that if Galanz breaches the exclusivity provisions of Amendment 140, Galanz shall pay Sunbeam $200,000 per case in liquidated damages, without limiting any of Sunbeam's other rights.

**III.     Notwithstanding the Supply Agreement's Multiple Exclusivity Provisions and that Sunbeam is the Owner of the French Door Toaster Oven Designs, Galanz Is Manufacturing and Selling Substantially Similar French Door Toasters to Third Parties in the U.S. Under Galanz's Own Label.**

25.     Since approximately 2015, Galanz has continually manufactured and sold the French Door Toaster Ovens to Sunbeam for Sunbeam's exclusive distribution pursuant to the Supply Agreement, as amended.

26.     At no time has Galanz provided any notice of its intent to terminate the Supply Agreement, which remains effective.

27.     Nevertheless, on or about July 14, 2020, Sunbeam learned that Galanz had begun manufacturing and selling to third-parties in the U.S. a substantially similar French door toaster oven ("Galanz's French Door Product").

28.     Galanz has never consulted with Sunbeam for Sunbeam's decision as to whether Galanz's French Door Product is substantially similar to the Sunbeam French Door Toaster Ovens.

29.     Attached hereto as **Exhibit 5** is a side by side picture of Sunbeam's French Door Toaster Ovens (sold under the brand name Oster) and Galanz's French Door Product, which Galanz is now selling in the U.S.  The two products are obviously substantially similar in design and function, particularly with regard to their size, capacity, and the French door system that is a primary and distinctive feature of the Products.

30.     Galanz is now selling Galanz's French Door Product in the U.S. at Costco and other outlets in direct competition with Sunbeam's French Door Toaster Ovens.

31.     Sunbeam has notified Galanz that it is in breach of the Supply Agreement and Sunbeam has demanded that Galanz cease and desist from selling the substantially similar Galanz French Door Product in violation of the Supply Agreement, as amended.

32. Galanz has refused to cease and desist from selling the substantially similar Galanz French Door Product in violation of the Supply Agreement, as amended.

33. Galanz's conduct is causing Sunbeam to suffer irreparable harm for which there is no adequate remedy at law.

34. All conditions precedent to the filing of these claims have occurred, been waived, or been satisfied.

## Breach of Contract

35. Sunbeam hereby realleges each and every allegation contained in paragraphs 1 through 35, inclusive.

36. Sunbeam and Galanz entered into the Supply Agreement, as amended.

37. Under the Supply Agreement, as amended, Sunbeam is the owner of all designs for the French Door Toaster Ovens and Galanz is prohibited from manufacturing or selling substantially similar products.

38. As set forth above, Galanz has breached the Supply Agreement, as amended, by manufacturing and selling in the U.S. the Galanz French Door Product that is substantially similar to Sunbeam's French Door Toaster Ovens.

39. Galanz has also breached the Supply Agreement, as amended, by failing to consult with Sunbeam for Sunbeam's decision as to whether Galanz's French Door Product is substantially similar to Sunbeam's French Door Toaster Ovens.

40. Sunbeam has fully performed all of its obligations under the terms of the Supply Agreement, as amended, and/or any nonperformance has been waived or excused by Galanz.

41. As a result of Galanz's breach of the Supply Agreement, as amended, Sunbeam has and continues to suffer irreparable harm for which there is no adequate remedy at law.

42. In addition, Sunbeam is entitled to liquidated damages in the amount of $200,000 for each case of Galanz's breach of the Supply Agreement's exclusivity provisions.

WHEREFORE, Sunbeam prays for the entry of a judgment:

(a) permanently enjoining Galanz from continuing to manufacture and sell in the U.S. the Galanz French Door Product in violation of the Supply Agreement, as amended;

(b) awarding liquidated damages for sales that violate the exclusivity provisions of the Supply Agreement, as amended;

(c) awarding pre-judgment interest and costs; and

(d) granting such further relief as the Court may deem just and proper.

DATED: September 15, 2020

                                                                       Respectfully submitted,

COZEN O'CONNOR
Southeast Financial Center, Suite 3000
200 South Biscayne Boulevard
Miami, FL 33131-2352
Telephone: (305) 704-5940
Facsimile: (305) 704-5955

By: /s/ Charles C. Kline
    Charles C. Kline
    Florida Bar No. 137737
    ckline@cozen.com
    Jason R. Domark
    Florida Bar No. 0880191
    jdomark@cozen.com
    Reid Kline
    Florida Bar No. 0908991
    rkline@cozen.com